UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH FACEBOOK PROFILE ASSOCIATED WITH THE E-MAIL ACCOUNT ███████@GMAIL.COM THAT IS STORED AT PREMISES CONTROLLED BY FACEBOOK, INC. | Mag. No. _____ |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Addie C. Gilestra, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.  I make this affidavit in support of an application for a search warrant for information associated with a certain Facebook profile (the "account") that is stored at premises owned, maintained, controlled, or operated by Facebook, Inc. ("Facebook"), a social networking company headquartered at 1601 Willow Road, Menlo Park, California.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), 2703(c)(1)(A), and 3512(a), to require Facebook to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B, using the procedures described in Section III of Attachment B.

2.  The information requested in this search warrant is being sought pursuant to a request for assistance (the "request") from the Office of New Zealand Crown Law to the United States Department of Justice.  New Zealand authorities are investigating certain child sex

offenses, which occurred in or between on or about February 2015 and December 2015, in violation of the criminal laws of New Zealand, specifically, Section 134(1) of the *Crimes Act 1961*. Copies of the applicable laws are appended to this affidavit. Although the United States has no treaty obligation to render assistance to New Zealand, it generally does so as a matter of comity.

3. I am a Special Agent with the Federal Bureau of Investigation, and have been since 2009. I am currently assigned to the International Operations Division, Mutual Legal Assistance Treaty Unit. My current duties include responding to requests from foreign governments pursuant to Mutual Legal Assistance Treaties, including serving as the affiant on search warrant affidavits, serving search warrants, and reviewing the data received for relevance in compliance with the parameters of the search warrants.

4. My past assignments included conducting investigations related to narcotics trafficking, violent crimes, racketeering, child exploitation and child pornography. I have extensive experience in the execution of search warrants and the analysis of collected evidence. Additionally, I have received training in the operation of computers and the collection and handling of digital evidence.

5. The facts set forth in this affidavit are based upon information conveyed to the United States via the request by New Zealand authorities and upon my training and experience. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of the criminal laws of New Zealand have been committed by Nicholas Daniel Macphail ("Macphail") (date of birth: ▮▮▮▮▮▮▮▮) and certain

other known and unknown individuals. There is also probable cause to search the information described in Attachment A for evidence, instrumentalities, contraband or fruits of these crimes further described in Attachment B.

## JURISDICTION

7. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. *See* 18 U.S.C. § 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court "is acting on a request for foreign assistance pursuant to [18 U.S.C.] section 3512 . . . ." 18 U.S.C. § 2711(3)(A)(iii); *see also* 18 U.S.C. § 3512(a)(2)(B) (court may issue "a warrant or order for contents of stored wire or electronic communications or for records related thereto, as provided under section 2703"), § 3512(c)(3) ("application for execution of a request from a foreign authority under this section may be filed . . . in the District of Columbia").

8. This application to execute the request has been approved and duly authorized by an appropriate official of the Department of Justice, through the Office of International Affairs ("OIA").[1] *See* 18 U.S.C. § 3512(a). An OIA attorney has reviewed the request, confirmed that it was submitted by New Zealand authorities in connection with a criminal investigation and/or prosecution, and authorized the undersigned to file this application.

## PROBABLE CAUSE

9. According to New Zealand authorities, in February 2015, Macphail entered into a relationship with the mother of a then 13-year-old female (the "Victim") (date of birth: ▮▮▮▮

---

[1] The Attorney General, through regulations and Department of Justice directives, has delegated to the Office of International Affairs the authority to serve as the "Central Authority" under treaties and executive agreements between the United States and other countries pertaining to mutual assistance in criminal matters. *See* 28 C.F.R. §§ 0.64-1, 0.64-4, and Appendix to Subpart K, Directive Nos. 81A and 81B (2015).

■). Shortly thereafter, Macphail moved into a residence with the Victim and her mother. As the Victim's mother had ongoing health issues, during a portion of her relationship with Macphail, Macphail was the Victim's sole caregiver.

10. In approximately January 2016, the Victim and her mother moved to a new residence, at which time the Victim was sexually assaulted by her uncle. The Victim's uncle was arrested in May 2016, pleaded guilty to sexual assault charges, and was sentenced to imprisonment. Following the Victim's uncle's arrest, the Victim was removed from her mother's care and went to live with a caregiver.

11. In mid-2016, the Victim told her caregiver that, beginning shortly after February 2015 (when Macphail moved in with the Victim and her mother), Macphail also had sexually assaulted the Victim. The Victim said that, in approximately mid-2015, she began communicating with Macphail via Facebook Messenger. According to the Victim, Macphail asked the Victim to go out with him, she accepted, and from that point the Victim considered that she was in a relationship with Macphail. According to New Zealand authorities, Macphail and the Victim engaged in a secret relationship and various forms of sexual activity between March 2015 and December 2015, first having sexual intercourse on August 16, 2015 (just after the Victim's 14th birthday).

12. On July 8, 2016, the Victim reported Macphail's conduct to the police. On September 15, 2016, Macphail was interviewed by the police about the allegations and denied that any sexual activity had occurred between him and the Victim. Macphail was tried in July 2017 on one charge of indecent assault of a young person (under the age of 16) and three charges of sexual connection with a young person (under the age of 16). He was acquitted on the

indecent assault charge (which related to indecently touching the Victim in early 2015); however, the jury was hung on the other three charges and he faces a retrial.

13. The Victim has advised the police that she used the Facebook profile bearing the vanity name "███████ (New York)" and associated with the e-mail account ███████@gmail.com to communicate with Macphail. The Victim alleges that the profile contains Facebook messages and photographs that she and Macphail exchanged during the course of their relationship. The Victim has been unable to regain access to the Facebook account because she can neither remember nor reset the passwords for the Facebook profile or the associated e-mail account. On October 13, 2017, the Victim gave a statement to New Zealand Police in which she consented to the police accessing the contents of her Facebook profile associated with the e-mail account ███████@gmail.com. New Zealand authorities now seek content records for the Facebook profile, which they have reason to believe will contain evidence relating to Macphail's alleged sexual relationship with the Victim.

## BACKGROUND CONCERNING FACEBOOK

14. Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com. The website was launched on February 4, 2004, and is owned and operated by Facebook, Inc. Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

15. Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter. This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook

5

security questions and answers (for password retrieval), physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Facebook also assigns a user-identification number to each account. Facebook identifies unique Facebook accounts by a user's e-mail address, the user-identification number, or the username associated with a Facebook profile.

16. Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Facebook assigns a group identification number to each group. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

17. Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

18. Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items

6

available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

19. Facebook allows users to upload photos and videos, which may include any metadata such as location that the user transmitted when s/he uploaded the photo or video. It also provides users the ability to "tag" (*i.e.*, label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

20. Facebook users can exchange private messages on Facebook with other users. Those messages are stored by Facebook unless deleted by the user. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile. In addition, Facebook has a chat feature that allows users to send and receive instant messages through Facebook Messenger. These chat communications are stored in the chat history for the account. Facebook also has Video and Voice Calling features, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

7

21. If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

22. Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

23. Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

24. Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

25. Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

26. In addition to the applications described above, Facebook also provides its users with access to thousands of other applications ("apps") on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

27. Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address. These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action. For example, if a user views a

Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

28.  Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number).  In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users.  Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

29.  As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and experience, a Facebook user's IP log, stored electronic communications, and other data retained by Facebook, can indicate who has used or controlled the Facebook account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time.  Further, Facebook account activity can show how and when the account was accessed or used.  For example, as described herein, Facebook logs the Internet Protocol (IP) addresses from which users access

their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, Facebook builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Facebook "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

30. Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

## **CONCLUSION**

31. Based on the forgoing, I request that the Court issue the proposed search warrant.

32. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

33. Because the warrant will be served on Facebook, Inc. who will then compile the requested records and information at a time convenient to it, there exists reasonable cause to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

_____
Addie C. Gilestra
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on _____, 201\_\_\_

_____

UNITED STATES MAGISTRATE JUDGE

## Relevant Provisions of the Crimes Act 1961

**134 Sexual conduct with young person under 16**

(1) Every one who has sexual connection with a young person is liable to imprisonment for a term not exceeding 10 years.

(2) Every one who attempts to have sexual connection with a young person is liable to imprisonment for a term not exceeding 10 years.

(3) Every one who does an indecent act on a young person is liable to imprisonment for a term not exceeding 7 years.

(4) No person can be convicted of a charge under this section if he or she was married to the young person concerned at the time of the sexual connection or indecent act concerned.

(5) The young person in respect of whom an offence against this section was committed cannot be charged as a party to the offence if the person who committed the offence was of or over the age of 16 years when the offence was committed.

(6) In this section,—

    (a)    young person means a person under the age of 16 years; and

    (b)    doing an indecent act on a young person includes indecently assaulting the young person.


**Sexual connection** is defined in s 2(1) as:

(a)    connection effected by the introduction into the genitalia or anus of one person, otherwise than for genuine medical purposes, of—

    (i)    a part of the body of another person; or

    (ii)    an object held or manipulated by another person; or

(b)    connection between the mouth or tongue of one person and a part of another person's genitalia or anus; or

(c)    the continuation of connection of a kind described in paragraph (a) or paragraph (b)

## ATTACHMENT A
**Property to Be Searched**

This warrant applies to information associated with to the Facebook profile associated with the e-mail account ███████**@gmail.com** that is stored at premises owned, maintained, controlled, or operated by Facebook, Inc., a company headquartered at 1601 Willow Road, Menlo Park, California.

## ATTACHMENT B

**Particular Things to be Seized and Procedures
to Facilitate Execution of the Warrant**

I. **Information to be disclosed by Facebook, Inc. (the "Provider") to facilitate execution of the warrant**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any messages, records, files, logs, or other information that have been deleted but is still available to the Provider, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose the following information to the government for each account or identifier listed in Attachment A (the "Account"):

(a) The contents of any available messages or other communication associated with the Account (including, but not limited to, messages, attachments, draft messages, posts, chats, video calling history, Friend requests, discussions, recordings, images, or communications of any kind sent to and from the Account, including stored or preserved copies thereof), the source and destination addresses and all IP addresses associated with each message or other communication, the date and time at which each message or other communication was sent, and the size and length of each message or other communication, for the period from January 31, 2015, through and including December 31, 2015;

(b) All photos and videos uploaded by the Account and all photos or videos uploaded that have the Account tagged in them, including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos, for the period from January 31, 2015, through and including December 31, 2015;

(c)    All records or other information regarding the identification of the Account, to include full name, physical address, telephone numbers, birthdate, security questions and passwords, and other personal identifying information, records of session times and durations, the date on which the Account was created, the length of service, types of services utilized by the Account, the IP address used to register the Account, log-in IP addresses associated with session times and dates, account status, alternative e-mail addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number), and any account(s) linked by machine cookies (meaning all Facebook user-IDs that logged into Facebook by the same machine as the Accounts);

(d)    All records or other information, including address books, contact and Friend lists, calendar data, and files; profile information; News Feed information; Wall postings; Notes; "check ins"; groups and networks of which the Account is a member; future and past event postings; rejected "Friend" requests and blocked users; status updates; comments; gifts; pokes; tags; the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked"; searches performed by the Account; privacy settings, including privacy settings for individual Facebook posts and activities; information about the Account's access and use of Facebook applications; and the Account's access and use of Facebook Marketplace for the period from January 31, 2015, through and including December 31, 2015; and

2

(e)     All records pertaining to communications between the Provider and any person regarding the Account, including contacts with support services and records of actions taken for the period from January 31, 2015, through and including December 31, 2015.

The Provider shall deliver the information set forth above via United States mail or courier to:  Supervisory Special Agent Robert C. Basanez, Federal Bureau of Investigation, J. Edgar Hoover Building, MLAT Unit, Room 7848, 935 Pennsylvania Avenue, NW, Washington D.C. 20535-0001 or e-mail to HQ_ISP_MLAT_Returns@FBI.gov.

**II.     Information to be seized by the government**

All information described above in Section I that constitutes fruits, contraband, evidence, and instrumentalities of child sex offenses in violation of the criminal laws of New Zealand, specifically, Section 134(1) of the *Crimes Act 1961*, including, for the account or identifier listed on Attachment A (the "Account"), information pertaining to the following matters:

(a) Files, documents, video, photographs, recordings, images, messages, chats, posts or any other communications involving the Account relating in any way to, or otherwise corroborating the existence of, the romantic and/or sexual relationship between the Victim and Macphail, the formation of such relationship, and any sexual activity engaged in by the Victim and Macphail;

(b) Evidence indicating how and when the Account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Account owner; and

(c) The identity of the person(s) who created or used the Account, including records that help reveal the whereabouts of such person(s).

### III. Government procedures for warrant execution

The United States government will conduct a search of the information produced by the Provider and determine which information is within the scope of the information to be seized specified in Section II. That information that is within the scope of Section II may be copied and retained by the United States and shared with appropriate foreign authorities.

Law enforcement personnel will then seal any information from the Provider that does not fall within the scope of Section II and will not further review the information absent an order of the Court.